UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEANNETTE T., | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:21-cv-00133 (SDV) |
| | : | |
| KILOLO KIJAKAZI, [1] | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| *Defendant*. | : | |

**RULING ON PENDING MOTIONS**

Plaintiff Jeannette T. (hereinafter, the "plaintiff") brings this administrative appeal

pursuant to 42 U.S.C. § 405(g) from the decision of the Commissioner of the Social Security

Administration denying her application for disability insurance benefits pursuant to Title II of the

Social Security Act.[2]  Pending before the Court are the parties' cross-motions to reverse or affirm

the Commissioner's decision, respectively.  For the reasons set forth below, the Court **DENIES**

plaintiff's Motion for Order Reversing the Decision of the Commissioner (Doc. No. 19), and

**GRANTS** the Commissioner's Motion to Affirm (Doc. No. 22).

---

[1] Since the filing of this case, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration Commissioner of the Social Security Administration.  She is therefore automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiff filed a parallel application for supplemental security income ("SSI") assistance under Title XVI of the Act.  R. 422.  SSI is available to claimants who are indigent and disabled without reference to prior qualifying work.  *See Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The ALJ's finding that plaintiff was disabled as of September 6, 2019, meant that she was potentially eligible for SSI on that date.  Accordingly, the ALJ referred plaintiff to the agency for a determination of financial eligibility.  R. 34.  Plaintiff is not alleging any error with respect to her SSI application.  *See* Doc. No. 19-1, at 1 (specifying that plaintiff is appealing from Commissioner's finding that she was not disabled prior to her date last insured with respect to her application for disability insurance benefits).

## I.     <u>**STANDARD OF REVIEW**</u>

Under the Social Security Act, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant will meet this definition if his or her impairments are of such severity that the claimant can neither perform previous work nor "engage in any other kind of substantial gainful work which exists in the national economy" considering his or her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

To be eligible for Title II benefits, an adult claimant must establish the onset of disability during the period in which he or she was insured for disability benefits based on quarters of qualifying work.  42 U.S.C. § 423; *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]."  42 U.S.C. § 1383(c)(1)(A).  The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs").  *See* 20 C.F.R. § 404.929.

The Commissioner follows a five-step sequential evaluation process for assessing disability claims as provided in 20 C.F.R. § 404.1520.  (1) First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  (2) If not, the Commissioner considers whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely

on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings"). If so, and if it meets the durational requirements,[3] the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience. (4) If not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity (hereinafter, "RFC") to perform his or her past work.[4] (5) If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform in light of his or her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

A claimant may request review of an ALJ's decision by the Appeals Council. *See* 20 C.F.R. § 404.967. If the Appeals Council declines review or affirms the ALJ's opinion, the claimant may appeal to the United States District Court. 42 U.S.C § 405(g). On appeal, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "A district court

---

[3] Unless the impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

[4] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). It must be "more than a mere scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). However, the Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## II.   **BACKGROUND**

### a.   **Procedural History**

On September 30, 2016, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act alleging a disability onset date of August 29, 2010. R. 166. The claim was denied at the initial and reconsideration levels, and plaintiff requested a hearing. R. 164, 182, 254.

On May 23, 2018, ALJ I. K. Harrington conducted a hearing ("2018 hearing") at which

plaintiff and a vocational expert testified.  R. 102-143.  On June 20, 2018, ALJ Harrington issued

a decision denying plaintiff's claim (hereinafter, "prior decision").  R. 188-201.  Plaintiff

requested review from the Appeals Council. R. 598-602.  On October 29, 2019, the Appeals

Council vacated the prior decision and remanded to the ALJ for another hearing.  R. 208-212.

On February 6, 2020, ALJ John T. Molleur (hereinafter, "the ALJ") conducted a second

hearing ("2020 hearing") at which plaintiff and a vocational expert testified.  R. 47-91.  On

March 2, 2020, the ALJ issued a partially favorable decision (hereinafter, the "decision") finding

that plaintiff was disabled within the meaning of the Social Security Act as of September 6,

2019.  R. 33-34.  However, because plaintiff's "date last insured" was December 31, 2016, the

ALJ determined that she was not entitled to disability insurance benefits.[5]  R. 17-35.  The

Appeals Council denied plaintiff's request for review.  R. 1.  On January 29, 2021, plaintiff filed

this administrative appeal.  Doc. No. 1.

**b.  <u>Factual History</u>**

In her 2016 application, plaintiff identified her impairments as depression, breast cancer,

and injury in the back.  R. 497.  At the 2018 hearing, plaintiff's counsel summarized her

conditions as orthopedic and neurological impairments from falls, breast cancer, migraines,

Lyme disease, R. 107-110, and plaintiff added testimony concerning concussions, herniated

discs, depression, sleep issues, cognitive and focus issues, memory issues, tinnitus, tennis elbow,

and neck and back pain, R. 113-116, 122, 127, 129.  At the 2020 hearing, plaintiff's counsel

summarized her conditions as breast cancer, spinal issues, migraines, neck and back pain, Lyme

---

[5] The date last insured ("DLI") is a technical term used by the Commissioner to mark the last day
on which a claimant is eligible for disability insurance benefits under Title II based on his or her
dates of qualifying work.  *See Carrero-Chavez v. Kijakazi*, No. 3:20-cv-01327 (VAB), 2022 WL
819547, at *8 n.4 (D. Conn. Mar. 18, 2022); *Stergue v. Colvin*, No. 3:13-cv-25 (RNC) (DFM),
2014 WL 12825146, at *2 (D. Conn. May 30, 2014).

disease, depression and anxiety, and cognitive deficits, R. 53-54, and plaintiff added testimony concerning vertigo, tinnitus and tennis elbow, R. 69, 75.

The following is a compilation of plaintiff's testimony from the 2018 and 2020 hearings. She was born in 1964. She completed high school, with two years of college but no degree. R. 56, 111-112. She worked as a senior designer for a furnishing store, including at client's homes, and also managed other employees. R. 134-35.

Regarding her medical conditions, plaintiff testified that she stopped working in August 2010 due to a breast cancer diagnosis. R. 64, 113-114. She was treated with chemotherapy and had approximately twelve surgeries through 2013, including mastectomies and transfer of her latissimus dorsi muscles, and for a period of time she could not lift her arms above her shoulders. R. 65, 114-115. She could put on a boot but not take it off. R. 67. Plaintiff had hormone infusions after the surgeries, and ultimately had a hysterectomy to resolve that issue. R. 70. Prior to stopping work in 2010, plaintiff had two worker's compensation incidents involving concussions and a neck injury, which exacerbated preexisting migraines and herniated discs. R. 59, 63-64, 68-69, 112-113. She also experienced cognitive, memory and focus issues from concussions, and gave her brother power of attorney for her worker's compensation claims. R. 73, 115-116. She testified that, from 2010 to 2015, her migraines were chronic, some lasting a week or a month, with nausea, vertigo, and tinnitus. R. 69. She still has constant tinnitus in her ears. R. 69-70. In 2015 and 2016, she had migraines at least 10 to 20 times per month. R. 120. Plaintiff tried medications and physical therapy for her neck, trapezius muscles, and shoulders, which are very tight. R. 66-67, 72. Her medications cause dry eyes. R. 75. From 2014 or 2015 onward, she has obtained pain management injections including Botox, which numbs the pain for a few weeks. R. 72, 75-76, 122. Plaintiff has daily back pain, including 10 out of 10 in

6

severity.  R. 67.  She continues to suffer frequent migraines.  R. 123.  She has tennis elbow and

sleeps with her arms straight.  R. 76.  In 2016, she was diagnosed with Lyme disease.  R. 76.

She has flare-ups approximately every three months, which causes her body to feel heavy,

lethargic, and sore.  R. 76-77.  Plaintiff began treatment for depression during her cancer

treatment and continued thereafter, with a temporary interruption in treatment while looking for a

new provider due to starting Medicaid in 2015.  R. 71, 77, 118.  As of the 2020 hearing, she was

seeing a therapist weekly.  R. 78.

Regarding her activities of daily living, plaintiff testified that she lives with her mother.[6]

R. 55, 111.  Plaintiff drives a car, except for a period after her surgeries.  R. 80.  From 2014

through 2015, plaintiff visited her ailing father in California.[7]  R. 80, 126.  She testified that

between 2011 and 2016, she did nothing recreationally, missed two weddings, and spent time in

quiet because sound bothered her.  R. 79.  Since living with her mother, plaintiff has done dishes

and some grocery shopping, and has done laundry but could not carry a laundry basket.  R. 128-

29.  She dusted and wiped down a bathroom, but did no heavy cleaning.  R. 68.  She could

shower and dress but her neck and elbow pain made it difficult to use a blow dryer.  R. 129.  She

could not lift heavy weights, and used two hands for a heavy grocery bag.  R. 66.  Plaintiff

testified that she looked for work at some point in 2016.  R. 120-21.

The record also includes 2,746 pages of medical records.  R. 655-3400.  In addition to

---

[6] Plaintiff testified at the 2020 hearing that she had been living with her mother since 2015-2016.
R. 55.  However, she reported to treaters in October 2012 and March 2014, and to the agency in
her September 2016 SSI application, that she lived alone.  R. 423, 745, 2463.

[7] Plaintiff testified at the 2018 hearing that she traveled to California to care for her father and
"put that as a priority," but testified at the 2020 hearing that she did not assist with his care "in
any way."  R. 80, 126.  In an April 2015 treatment note, plaintiff reported that she had returned
from caring for her father while he was hospitalized in California, and had also been caring for
her mother.  R. 1257.

cancer treatment, including surgeries and post-surgical care, plaintiff treated *inter alia* with a spine specialist from 2009 to 2013 (R. 655-736); various pain management physicians for headaches, neck pain, and back pain including injection therapies from 2011 to 2019 (R. 737-868, 1330-1364, 2118-2152, 2332-2355, 2407-2433, 2053-3102, 2572-3052, 3351-3400); physical therapists at various times from 2008 to 2019 (R. 2455-2472, 3168-3273); and a psychiatrist from December 2015 to April 2016 (R. 1004-1019); and she obtained mental health therapy and medication management in 2018 and 2019 (R. 3274-3336). Additionally, plaintiff obtained a neuropsychological evaluation from Christine Yantz, PhD in February 2018. (R. 2435-2438.)

   c.  **The ALJ's Decision**

   In the March 2, 2020, decision, the ALJ followed the five-step sequential evaluation to determine whether plaintiff was disabled under the Social Security Act. At Step 1, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date. R. 20. At Step 2, the ALJ found plaintiff has the following severe impairments: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; migraines; post-concussive syndrome; left breast cancer status-post double mastectomy with breast reconstruction surgeries; and Lyme disease. R. 20. At Step 3, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. R. 23-25. Next, the ALJ determined plaintiff retained the following residual functional capacity since August 29, 2010:

> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that the claimant must avoid climbing ladders, ropes, or scaffolds. The claimant could perform postural activities no more than occasionally. The claimant is limited to no overhead reaching with both upper extremities and is limited to frequent reaching in all other directions with both upper extremities. The claimant must avoid work at unprotected heights. The claimant must avoid

work in close proximity to exposed moving machinery parts or to mobile machinery, such as forklifts.  The claimant must avoid more than occasional exposure to dusts, fumes, gases, poor ventilation, noxious odors, or other lung irritants, such as higher concentration of dusts, fumes, or gases.

R. 26.

At Step 4, the ALJ found that, since August 29, 2010, plaintiff is unable to perform any past relevant work as a furniture salesperson (semi-skilled) or as an interior designer (skilled). R. 32.  At Step 5, the ALJ found, based on the testimony of a vocational expert, that plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy so long as transferability of skills from her previous work was not a factor. However, the ALJ noted that once plaintiff turned 55 years old, she achieved "advanced age" status such that transferability of her skills (semi-skilled or skilled) became material under the Medical-Vocational Guidelines.  *See* 20 C.F.R. pt. 404, Subpt. P, App. 2, at 202.06. Consequently, the ALJ found that plaintiff became disabled within the meaning of the Social Security Act as of September 6, 2019.  R. 32-34.  Because this occurred after her date last insured (December 31, 2016), the ALJ concluded that she was not disabled for purposes of her disability insurance benefits application.  R. 34.

## III.    DISCUSSION

The issues that plaintiff raises on this appeal fall into two categories.  First, plaintiff disputes the ALJ's findings as to the four "paragraph B" criteria for evaluating mental disorders. Specifically, she disputes the ALJ's finding that certain medically determinable impairments did not "significantly limit" her ability to perform basic work activities, and she contends that certain impairments were "marked or extreme."  Doc. No. 19-1, at 6-11.  Second, plaintiff disputes the ALJ's RFC analysis with respect to (i) the weight assigned to the opinions of medical sources and the agency consultants (*id.*, at 18-25), (ii) the finding that plaintiff could perform "light"

9

work (*id.*, at 11-16), and (iii) the lack of restrictions relating to task attention and absences (*id.*, at 16-18).  The Court addresses each argument in turn.

    a.  **The ALJ's paragraph B findings**

Plaintiff's "paragraph B" argument implicates the method in 20 C.F.R. § 404.1520a for evaluating the severity of mental impairments at Steps 2 and 3 of the sequential analysis.  In general terms, at Step 2, the ALJ performs a screening function by evaluating whether a claimant has any medically determinable impairment or combination of impairments that is severe – if not, the analysis ends and the claim is denied.  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (standard for a finding of severity at Step 2 "is *de minimis* and is intended only to screen out the very weakest cases").  A "severe" impairment is one that "significantly limits" a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); *see also* Soc. Sec. Rul. 85-28, 1985 WL 56856 (S.S.A. 1985) (claim may be denied at Step 2 only if combination of impairments does not have "more than a minimal effect" on ability to perform basic work activities).  If there is a severe impairment, the ALJ proceeds to Step 3 and evaluates whether the impairment(s) meets the definition of a listed impairment and the durational requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), (d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereinafter, the "Listings").

Where the claimant alleges mental impairments, the ALJ analyzes their severity at Steps 2 and 3 under the "special technique" described in 20 C.F.R. § 404.1520a.  *See Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011); *Monica L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1435 (CJS), 2021 WL 630909, at *3 (W.D.N.Y. Feb. 18, 2021).  The criteria for this evaluation – usually referred to as the "paragraph A" and "paragraph B" criteria – are provided in section

12.00 of the Listings.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  First, the ALJ evaluates

whether the claimant has a medically determinable mental impairment using the paragraph A

criteria.  *See* 20 C.F.R. § 404.1520a(b)(1).  If so, the ALJ assesses the claimant's degree of

functional limitation in the "four broad functional areas" described in paragraph B: (1)

understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or

maintain pace; and (4) adapt or manage oneself.  *See id.* § 404.1520a(c).  The ALJ must rate the

degree of limitation in each functional area on a five-point scale: None, mild, moderate, marked,

and extreme.  *Id.* § 404.1520a(c)(4).  A rating of "none" or "mild" usually results in a finding

that an impairment(s) is not severe.  *Id.* § 404.1520a(d)(1).

In this case, the ALJ found at Step 2 that, in addition to certain physical impairments,

plaintiff had medically determinable mental impairments of anxiety, depression, ADHD, and

dysthymia.  R. 20-21.  He then evaluated her functional limitations in the four paragraph B areas,

found that the degree of limitation in each area was "mild" in light of the entire record, and

concluded that these impairments were not severe.  R. 21-23.  Regardless, because the ALJ

found that plaintiff had other impairments that were severe, he proceeded to Step 3 of the

sequential analysis.

It is not clear on the face of plaintiff's paragraph B argument what she contends to be

reversible error.  To the extent she is suggesting that the ALJ should have evaluated her *physical*

impairments under the paragraph B criteria, that is incorrect – the special technique in 20 C.F.R.

§ 404.1520a applies to *mental* impairments.  What remains is plaintiff's contention that her

mental limitations were "significant" and that the ALJ should have found them to be "marked or

---

[8] There are also paragraph C criteria in Listings § 12.00 pertaining to "serious and persistent
mental disorders," which are not relevant here.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.

extreme" at Step 2. [9]  Doc. No. 19-1, at 6.  There is substantial evidence to support the ALJ's "mild" rating for each of the paragraph B areas and, even assuming he misjudged the record, it would be harmless error.

### i.   *Understanding, remembering, or applying information*

The first functional area in paragraph B is "understanding, remembering, or applying information," which "refers to the abilities to learn, recall, and use information to perform work activities."  Listings § 12.00(E).  Citing to nine different sets of treatment notes, the ALJ acknowledged plaintiff's complaints of cognitive difficulties and the observation by neuropsychologist Christine Yantz, PhD of "mild word-finding difficulties."  *See* R. 2437 ("occasional word finding difficulties observed").  The ALJ contrasted plaintiff's complaints with the results of neuropsychological testing by Dr. Yantz in February 2018, and with ongoing mental status examinations, including by psychiatrist Antolin Trinidad, MD in late 2015 and early 2016 of unimpaired memory and only mild cognitive difficulties at times (*see* R. 1008-09, noting mild narrative sequencing problems) and other providers, including neurologist Jianhui Zhang, MD from 2014 through 2017 (*see*, *e.g.*, R. 2334).  The ALJ also cited an observation during an August 2014 intake exam by primary care physician Naomi Smidt-Afek, MD that plaintiff complained of cognitive difficulties but "seems to be able to give an organized comprehensive history."  R. 1733.

There is substantial evidence to support the ALJ's rating of "mild" in this functional area, both as cited by the ALJ and appearing elsewhere in the record.  In one mental status evaluation on November 6, 2017, Dr. Zhang opined that plaintiff's "orientation, memory, attention,

---

[9] Plaintiff's argument does not address the definition of any particular listed disorder, and so does not appear to be challenging the ALJ's Step 3 analysis.  *See* Doc. No. 19-1, at 6-11.

language and fund of knowledge were normal." R. 2334. Again on December 28, 2017, Dr.

Zhang described plaintiff as "alert, awake, and oriented to person, place, time and situation;

attentive . . . speech fluent without errors . . . ." R. 2580. A January 22, 2018, brain MRI

showed unremarkable results. R. 2619. On February 21, 2018, Christine Yantz, Ph.D.,

conducted neuropsychological testing and concluded that plaintiff had only "mild" weakness in

executive functioning, average cognitive-intellectual abilities, and strong verbal and nonverbal

memory skills. R. 2436. Dr. Yantz opined: "The results of [the] assessment reveal[ed] generally

intact cognitive abilities across most domains; low average performances, falling within

generally expected limits for [plaintiff], included verbal fluency, complex attention, planning and

estimating abilities. The only frankly impaired performance [] was confrontation naming"

consistent with plaintiff's complaints of word-finding difficulty. R. 2437. Dr. Yantz added:

> Given her strong cognitive profile in the context of a number of medications that
> contribute to central nervous system slowing (including Topamax which was
> identified by [plaintiff] as precipitating her cognitive symptoms initially), I
> suspect that her word finding issues will resolve with appropriate titration of
> medications.

R. 2438. Dr. Yantz recommended psychological counseling, attending to one task at a time in a

distraction-free and structured environment, and increasing her engagement in meaningful

activities to increase her sense of purpose and reduce her experience of pain. *Id.*

In rebuttal, plaintiff cites her February 2010 complaints to neurologist Scott Simon, MD

of fogginess, memory deterioration, and poor attention. R. 686. However, Dr. Simon's

assessment at that time was that these were symptoms of post-concussive syndrome from the

work injury three months prior, and he "reassured" plaintiff that symptoms "usually subside in

time." *Id.* Plaintiff also cites to Dr. Simon's August 2013 observations that she was poorly

focused, slow in answering questions, and had poor attention. R. 728. However, Dr. Simon did

not attempt to make a diagnosis but, rather, referred plaintiff for neuropsychological testing.  R. 729.  Additionally, Plaintiff alleges that there was a medical assessment of memory deficit in November 2016; however, the record indicates that Dr. Zhang, like Dr. Simon before him, did not attempt to make a diagnosis but referred plaintiff instead for a "neuropsychological evaluation for memory loss and ADD."  R. 2351.  Plaintiff was initially unable to obtain that evaluation in November 2016 due to insurance issues.  R. 2482.  When she finally underwent neuropsychological evaluation in February 2018, it resulted in the mild findings by Dr. Yantz as described above, R. 2435-38, which are consistent with the ALJ's conclusion that Plaintiff had only a mild limitation in understanding, remembering, or applying information.

### ii.  Interacting with others

Plaintiff does not contest the ALJ's finding as to the second functional area that she had only a mild limitation in "interacting with others."

### iii.  Concentrating, persisting, or maintaining pace

The third functional area in paragraph B is the ability "to concentrate, persist or maintain pace," which "refers to the abilities to focus attention on work activities and stay on task at a sustained rate."  Listings § 12.00(E).  Here again, the ALJ cited to Dr. Yantz's neuropsychological testing, including her finding of only mild weakness in executive functioning and her observations that plaintiff could focus on tasks and follow directions.  *See* R. 2435-38. The ALJ also cited the ongoing mental status examinations by various providers, including Dr. Zhang, Margaret Trussler, APRN, and multiple neurologists over time at Yale New-Haven Hospital who observed normal memory, comprehension and attentiveness. R. 2580, 2631, 2670, 3274-3336.  The evidence that plaintiff cites in rebuttal does not compel the conclusion that the ALJ lacked substantial evidence for his conclusion that plaintiff had only a mild limitation in

14

concentration, persistence, or maintaining pace.  Some of plaintiff's citations concern her migraines; however, not only are headaches not a mental impairment subject to paragraph B analysis, but they are not in dispute, given the ALJ's separate finding that plaintiff's migraines and post-concussive disorder were severe impairments.  Plaintiff's other citations are largely from neurologist Dr. Simon who treated her for neck pain, back pain and headaches between 2010 and 2013.  The records show that Dr. Simon was primarily concerned about pain management, *see*, *e.g.*, R. 683 (noting in December 2013 that "[s]he has been completely incapacitated due to this pain"), and Dr. Simon deferred to other specialists for medical judgments regarding plaintiff's mental conditions and limitations, such as his referral for neuropsychological testing to Dr. Yantz described above, *see* R. 686.  In sum, substantial evidence supports the ALJ's conclusion that Plaintiff had only a mild limitation in concentration, persistence, or maintaining pace.

### iv.  Adapting or managing oneself

The fourth functional area in paragraph B is "adapting or managing oneself," which "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting."  Listings § 12.00(E).  In this regard, the ALJ cited providers' observations of plaintiff's appropriate grooming as well as plaintiff's own reports that she changed residences, traveled, and went on trips at times during the relevant period, indicating some intact ability to adapt and manage herself.  R. 22-23.  This is consistent with plaintiff's contemporaneous reports to treaters that she traveled to Israel for vacation around March 2012 (R. 666), traveled to California around October 2013 (R. 1461), broke her rib on a roller coaster at Lake Compounce in August 2014 (R. 2311), traveled to California to care for her father around April 2015 (R. 1007, 1257), planned to fly to California in December 2015 to help her sister (R. 1707), returned from vacation in

Scotland on December 31, 2016 – which coincidentally was her date last insured – (R. 2168), helped her son unpack and move into an apartment in Brooklyn in November 2018 (R. 2816), and traveled to Pittsburgh in February 2019.  The ALJ also noted plaintiff's reports she lived alone (R. 745, March 2014), and could independently complete her activities of daily living including cooking, paying bills, and driving (R. 2436, February 2018).  Although plaintiff testified at the 2020 administrative hearing that she had lived with her mother since 2013, R. 55, she stated to treaters in October 2012 and March 2014, and to the agency in her September 2016 SSI application, that she lived alone, all of which the ALJ was entitled to weigh in assessment of plaintiff's credibility.  R. 423, 745, 2463.  In her attempt to contradict evidence indicating that she is able to manage herself, plaintiff primarily relies upon her own testimony, such as her statement that she gave power of attorney to her brother to manage her worker's compensation case (R. 74); however, that example does not speak to her ability to regulate herself and maintain well-being.  Plaintiff also cites her hearing testimony concerning the physical challenges of housework, Doc. No. 19-1, at 10, but this does not speak to the evaluation of *mental* impairments, including her ability to manage herself. [10]  Ultimately, an ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (ALJ "is not required to accept the claimant's subjective complaints without question").  With respect to functional limitations caused by her mental impairments, substantial evidence supports the ALJ's conclusion that

---

[10] Similarly, plaintiff asserted to Dr. Yantz in February 2018 that she "has difficulty with heavy housework due to *orthopedic* symptoms."  R. 2435 (emphasis added).

Plaintiff had only a mild limitation in adapting or managing herself.

### v.  *The alleged error at Step 2 was harmless*

Even assuming that the ALJ's paragraph B assessment was not supported by substantial evidence, any such error would be harmless.  The ALJ found that plaintiff had other severe impairments at Step 2 – including degenerative disc disease of the cervical and lumbar spine, migraines, post-concussive syndrome, breast cancer status post surgeries, and Lyme disease – and therefore proceeded to Step 3 of the sequential analysis and beyond.  R. 20.  The ALJ's RFC analysis after Step 3 also included further consideration of plaintiff's mental impairments, including with citations to the treatment record concerning cognitive abilities and analysis of the opinions of neuropsychologist Dr. Yantz and neurologist Dr. Simon.  R. 29-31.  Consequently, even assuming that the ALJ's paragraph B assessment at Step 2 was not adequately supported, the error would be harmless.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (harmless error where ALJ proceeded past Step 2 and "specifically considered" the non-severe impairments in subsequent steps); *but see Hernandez v. Berryhill*, No. 3:17-CV-368 (SRU), 2018 WL 1532609, at *12 (D. Conn. Mar. 29, 2018) (error was not harmless where ALJ did not consider non-severe impairment after Step 2 "in any meaningful way").  Based on the foregoing, the Court finds no reversible error at Step 2.

### b.  <u>The RFC analysis</u>

Plaintiff's other arguments are directed at the ALJ's determination of her residual functional capacity.  Doc. No. 19-1, 11-25.  RFC is "the most [a claimant] can still do" in a work setting despite his or her limitations, and it is assessed "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a).  The ALJ concluded that, since August 29, 2010, plaintiff has the RFC to perform "light work as defined in 20 C.F.R. 404.1567(b) and

416.967(b)" with the following additional limitations: (1) avoid climbing ladders, ropes, or scaffolds; (2) perform postural activities no more than occasionally; (3) no overhead reaching with both upper extremities, but frequent reaching in all other directions; (4) avoid unprotected heights; (5) avoid close proximity to moving machinery; and (6) no more than occasional exposure to dusts, fumes, gases, poor ventilation, noxious odors, or other lung irritants, such as higher concentration of dusts, fumes, or gases.  R. 26.  Plaintiff disputes this determination with respect to (i) the weight assigned to the underlying opinions of medical sources and the agency consultants, (ii) the finding that plaintiff could perform "light" work, and (iii) the lack of restrictions relating to task attention and absences.

### i.   *Assigning weight to the opinion evidence*

Plaintiff argues that the RFC determination is contrary to the opinions of treating neurologist Dr. Simon and the state agency consultants who reviewed her application at the initial and reconsideration levels, and she contends that the ALJ erred in assigning "little weight" to these opinions.  Doc. No. 19-1, at 18-25.  The final decision on a claimant's RFC is reserved to the Commissioner, *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017), and genuine conflicts in the medical evidence are for the ALJ to resolve.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Under the "treating physician rule" applicable to claims filed before March 27, 2017, certain medical opinions are given special consideration: "If [the Commissioner] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s)

is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). [11]  The ALJ must give "good reasons" for the weight assigned to a treating source's medical opinion, and considers certain factors if declining to give it controlling weight, including whether the source examined the claimant; the length of the relationship; the nature of the treatment (including whether the source treated the claimant for the impairment in question); the supportability of the opinion (including reliance on medical signs and lab findings); consistency with the whole record; whether the treater has a relevant specialty; and any other relevant factors.  20 C.F.R. § 404.1527(c).  Notably, opinions by treaters on issues reserved to the Commissioner are not "medical opinions" and are not entitled to any special deference.  *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 77 (2d Cir. 2018) (citing 20 C.F.R. § 404.1527(d)(1) and Soc. Sec. Rul. 96-5p, 61 Fed. Reg. 34471 (July 2, 1996)).  Such opinions include, *inter alia*, what a claimant's RFC is, and whether she is "disabled" under the Act.  *See* SSR 96-5p.[12]

With respect to the weight of Dr. Simon's opinions, plaintiff argues that the ALJ did not follow the requirements of 20 C.F.R. § 404.1527, which raises a question of legal error.  *See Cora v. Colvin*, No. 15-CV-1549 (AJN), 2016 WL 4581343, at *3 (S.D.N.Y. Sept. 1, 2016)

---

[11] The "treating physician rule" has been eliminated but remains applicable to claims filed before March 27, 2017, such as this case.  *See Cortese v. Commr of Soc. Sec.*, No. 16-cv-4217 (RJS), 2017 WL 4311133, at *3 n.2 (S.D.N.Y. Sept. 27, 2017).  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply in place of § 404.1527 for purposes of weighing medical opinions, under the updated definition of "medical opinion" appearing in § 404.1513(a)(2).

[12] Social Security Ruling ("SSR") 96-5p has been rescinded "for claims filed on or after March 27, 2017."  *See* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-03p, Fed. Reg. 82, 15, 263 (Mar. 27, 2017).  The claim in this case precedes that cutoff.

(citing *Meadors v. Astrue*, 370 Fed. Appx. 179, 183 (2d Cir. 2010)).  Plaintiff contends that it was not "legitimate" for the ALJ to assign less weight to Dr. Simon's opinions based on their inconsistency with the whole record.  Doc. No. 19-1, at 19.  However, consistency "with the record as a whole" is one of the factors expressly provided in § 404.1527(c) for the ALJ to consider when assigning weight to the medical opinion of a treating source.  Plaintiff is similarly mistaken to the extent she criticizes the ALJ for considering evidence from the period after her date last insured in December 2016.  Doc. No. 19-1, at 21.  As the Second Circuit has explained, "[e]vidence bearing upon an applicant's condition subsequent to the date [last insured] is pertinent evidence in that it may disclose the severity and continuity of impairments existing before [that] date[.]"  *Lisa v. Sec'y of Dep't of Health & Hum. Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (quotation marks omitted).

Additionally, Plaintiff appears to argue that the ALJ should have given deference to what she describes as Dr. Simon's "unable to work notes," citing nine examples from February 2010 to December 2013.  Doc. No. 19-1, at 20-21.  For instance, in December 2013, Dr. Simon wrote: "I believe that [plaintiff] is totally disabled due to this pain and is unable to work."  R. 733. However, as noted above, whether a claimant is disabled is an issue reserved to the Commissioner, and a treating source's opinion on that issue is not a "medical opinion" and is not entitled to "special significance."  20 C.F.R. § 404.1527(d).  A close inspection of the ALJ's RFC analysis reveals that the ALJ did not discredit Dr. Simon's *medical* opinions as to the nature of plaintiff's impairments – in fact, he relied extensively upon Dr. Simon's records (Ex. 1F, 2F) throughout the RFC analysis to the extent they offered medical opinions as to the nature and severity of Plaintiff's impairments relating to head, neck, and back pain.  R. 27-28.  In contrast, the only part of Dr. Simon's opinions to which the ALJ assigned "little weight" were the

"various work ability statements."  R. 30-31.  Because these were not "medical opinions" under the treating physician rule, they were not entitled to deference.  *See* 20 C.F.R. § 404.1527(d). The ALJ properly evaluated Dr. Simon's statements on disability and articulated his reasons for assigning little weight to them, including for their lack of objective supporting evidence, lack of explanation, lack of more detailed functional assessment, and inconsistency with evidence of Plaintiff's actual activities and the observations of other treaters, as summarized in more detail above.  R. 31.

Plaintiff also argues in conclusory fashion that the sheer volume of treatment "corroborates" Dr. Simon's opinions that she could not work.  Doc. No. 19-1, at 20.  However, the total quantity of treatment does not establish the quality of a particular opinion or dictate a finding of disability.  Here, the ALJ properly applied the § 404.1527(c) factors to Dr. Simon's "blanket statements of disability," noting Dr. Simon's "failure to provide a functional assessment of the claimant's abilities, his lack of support for his assertions, and his failure to provide[] objective findings or analysis in support of his conclusions[.]"  R. 31; *see* 20 C.F.R. § 404.1527(c) (factors include specialty; whether source examined claimant; length, nature, and extent of treatment relationship; whether source gave supporting evidence and explanation; and consistency with the whole record).  These observations are borne out in the record, including Dr. Simon's fairly terse treatment notes and his complete lack of supporting detail on worker's compensation forms that he completed.  *See* R. 665, 668, 671, 680, 682-83, 700-01, 706, 713, 716, 719.[13]  In fact, due to Dr. Simon's lack of detail, it is not even clear on the face of those

---

[13] Some of the statements of disability cited in plaintiff's brief were written by Dr. Simon prior to plaintiff's August 2010 cancer diagnosis, while she was still working.  *See* R. 688 (2/3/10), 696 (7/13/10); *see also* R. 2444 dated 3/4/09 (noting intermittent work absence after January 2009 fall, and need for frequent breaks and physical therapy).

forms what his opinion was, although it can be inferred that he was asserting complete inability to work given that he neither checked boxes for any particular limitation (in standing, sitting, walking, etc.) nor recommended restrictions.  *Id*.  It was also proper for the ALJ to examine the consistency of Dr. Simon's opinions with the whole record pursuant to § 404.1527(c)(4).  As the ALJ noted, plaintiff "largely presented in no acute distress and with intact neurological findings, full strength of the upper and lower extremities, and a normal gait when meeting with providers, that she largely demonstrated intact memory, attention, and cognitive abilities in meetings with providers, and showed that she could drive a vehicle, garden, complete daily activities, and travel despite her complaints."  R. 31.  Thus, there is no legal error in the ALJ's evaluation of Dr. Simon's opinions.  Furthermore, to the extent that plaintiff is arguing that there is substantial evidence to support her contrary position, that is not the standard that applies to the Court's review on appeal.  *See Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.").

Plaintiff also asserts that the ALJ did not properly weigh the opinions of the state agency consultants who reviewed her file at the initial and reconsideration levels of the agency proceedings.  Doc. No. 19-1, at 23.  This argument lacks merit.  Plaintiff's brief fails to acknowledge that the consultants declined to opine on plaintiff's *mental* abilities due to insufficient evidence.  *See* R. 159-60, 176-77.  The ALJ could not weigh a nonexistent opinion. Plaintiff's brief also asserts that the "only" reason the ALJ assigned little weight to their opinions on plaintiff's *physical* abilities was because they did not examine plaintiff.  Doc. No. 19-1, at 23. In fact, while the ALJ acknowledged that the consultants did not personally treat the plaintiff, the ALJ nonetheless expressly considered the consistency of their opinions with the whole record,

and went on to conclude that the evidence of neck and back pain supported "additional postural and environmental restrictions *not opined* [by the consultants]," and "the evidence of limited use of the upper extremities from her breast cancer surgeries supports [a] significant reaching restriction as well." R. 29-30 (emphasis added). In other words, the ALJ's conclusions were *more favorable* to plaintiff than the consultants' opinions, and assigning greater weight to the consultants' opinions would not have changed the result of the ALJ's decision.

### ii.   *Whether plaintiff could perform light work*

Plaintiff also challenges the ALJ's determination that she retained the RFC to perform light work. Specifically, plaintiff contends that the evidence "would . . . fit better" with a hypothetical of sedentary work with only occasional reaching in all directions. Doc. No. 19-1, at 11-16. Here again, plaintiff misconstrues the standard of review. The Court's inquiry on appeal is whether the ALJ's findings were supported by substantial evidence, not whether the evidence might also support a different finding. *See Schauer*, 675 F.2d at 57. There was substantial evidence to support the ALJ's finding that plaintiff could "frequently" reach in all directions with both arms (but no overhead reaching) and that she was not limited to sedentary work. The ALJ noted MRI imaging showing mild-to-moderate degenerative changes with disc herniation at various regions of the spine, with pain, tenderness and decreased range of neck and back motion; however, the ALJ also noted disparity between plaintiff's complaints of severe pain compared to her affect and repeated presentations with normal gait, balance, and stance, as well as generally exhibiting normal range of motion during examinations. R. 27. Additionally, the ALJ cited sequential evidence spanning the period from 2009 to 2019 that plaintiff lived alone (at least until September 2016, *see* R. 423, 745, 2463), spent at least 20 minutes outside daily and was physically active for at least three times weekly for 30 minutes (R. 1632), rode a roller coaster

(R. 2311), looked for work (R. 1272, 1578, 1696), independently completed self-care and household activities of daily living (R. 2436), brushed snow off her car (albeit with discomfort, *see* R. 3184), exercised in an indoor pool (R. 3069); helped her son unpack and move into an apartment in Brooklyn (R. 2816), and was "active with gardening" (R. 3146). Regardless of whether this record could support the more restrictive finding that plaintiff is seeking, there is substantial evidence to support the ALJ's RFC determination that plaintiff could perform light work with the enumerated restrictions.

### iii. *Lack of restrictions relating to task attention and absences*

Lastly, plaintiff argues that the ALJ should have found her disabled because her conditions would cause her to be "off task" and absent from work too often. Doc. No. 19-1, at 16-18. In support, plaintiff points to her prior arguments regarding the paragraph B criteria as well as her ongoing complaints of migraines, vertigo and tinnitus. *Id.* This does not amount to a showing that there is a lack of substantial evidence for the ALJ's decision. As discussed above, the ALJ's Step 2 finding that plaintiff's mental impairments cause only "mild" limitation in concentration, persistence, and pace was supported by the only clinical assessment of those limitations, namely, the neuropsychological evaluation by Dr. Yantz. *See* R. 2435-38. As the ALJ noted, "Neuropsychological testing also showed only mild weakness in executive functioning [and] also showed that [plaintiff] could focus on tasks and follow directions, and that she had an average attention span." R. 23. Then, in his RFC analysis, the ALJ not only analyzed plaintiff's physical limitations, including with reference to the beneficial effects of injection treatments, but also ALJ revisited the issue of cognitive limitations. The ALJ also analyzed the opinions of Dr. Yantz and Dr. Simon, and noted discrepancies between the degree of limitation alleged in plaintiff's complaints as compared to treaters' observations during examinations and

plaintiff's contemporaneous admissions concerning her activities.  R. 27-31.  In fact, the ALJ's evaluation is remarkably thorough and thoughtful, with ample citation to the record.  The question before the Court is whether the ALJ's conclusions are supported by substantial evidence, not whether the record might also support a different conclusion.  *See Schauer*, 675 F.2d at 57.  Applying that standard, the Court finds no reversible error.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, plaintiff's Motion for Order Reversing the Decision of the Commissioner (Doc. No. 19) is **DENIED**, and defendant's Motion for Order Affirming the Decision of the Commissioner (Doc. No. 22) is **GRANTED**.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 14th day of April, 2022, at Bridgeport, Connecticut.

<u>/s/ S. Dave Vatti</u>
S. DAVE VATTI
United States Magistrate Judge